**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RYAN MICHAEL TAYLOR and JUAN GONZALEZ, individually and on behalf of all others similarly situated,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **CLEARA, LLC,** <br><br> **Defendant.** | ) ) ) ) ) ) ) ) ) ) | **CIVIL ACTION NO:** 26-7456 |

## CLASS ACTION COMPLAINT

Plaintiffs **RYAN MICHAEL TAYLOR** and **JUAN GONZALEZ**, individually and on behalf of all others similarly situated, file this Class Action Complaint and state as follows:

## NATURE OF THE ACTION

1. This is a consumer class action brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA") and common law, by Plaintiffs, seeking relief for Defendant's widespread violations thereof for themselves and all others similarly situated. The FCRA imposes on reporting agencies that use a consumer's public records for a background check several important requirements designed to protect consumers like Plaintiffs Taylor and Gonzalez. Congress passed the FCRA to protect consumers from the harm caused by inaccurate reporting. 15 U.S.C. § 1681(a)-(b) (Congressional statement of purpose). To this end, the FCRA requires that all consumer reporting agencies (CRAs) that report criminal background information to landlords use "reasonable procedures to ensure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Furthermore, the FCRA requires CRAs to provide file disclosures to consumers upon request (15 U.S.C. § 1681g), and to

conduct reasonable reinvestigations into the completeness and accuracy of information when consumers contact the CRA to dispute. 15 U.S.C. § 1681i.

2. Defendant systematically violates the FCRA by furnishing consumer reports to third parties which misattribute derogatory and defamatory information regarding sex offender registry records pertaining to other individuals on the consumer reports of consumer applying to rent housing, even though the consumer has no such record.

3. Defendant compounded this misreporting with respect to Plaintiff Taylor by flatly refusing to conduct a reinvestigation and remove the inaccurate information when he contacted Cleara to dispute the contents of the report, flouting its obligations under FCRA section 1681i, and failing to respond to his request for information pursuant to FCRA section 1681g.

4. Defendant's unlawful conduct as described above constitutes a violation of the Fair Credit Reporting Act.

5. Defendant's practices harm consumers seeking residential leases by prejudicing their prospective landlords with inaccurate and/or irrelevant adverse information, harms consumers' reputations, and causes them to waste time and resources.

## JURISDICTION AND VENUE

6. The Court has federal question jurisdiction under the FCRA, 15 U.S.C. §1681p.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b) as Defendant regularly conducts business in this district and division and a substantial part of the events giving rise to the claims occurred in this district and division.

## PARTIES

8. Mr. Taylor is a natural person, a resident of Pennsylvania, and a "consumer" as protected and governed by the FCRA.

9. Mr. Gonzalez is a natural person, a resident of Maryland, and a "consumer" as protected and governed by the FCRA.

10. Defendant is a limited liability company that conducts business throughout the United States and that has its principal address at 8000 Brooktree Rd Ste 210, Wexford, PA 15090.

11. At all relevant times hereto, Defendant has been a consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

*Defendant's Practices For Preparing Consumer Reports*

12. Congress passed the FCRA to protect consumers from the harm caused by the inaccurate information on consumer reports. To this end, the FCRA requires that all consumer reporting agencies (CRAs) that report criminal background information to follow "reasonable procedures to ensure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

13. The data and reports Defendant sells are used and expected to be used for multiple purposes governed by FCRA section 1681b and the information included in them bears on the credit history, credit worthiness, reputation, personal characteristics, and mode of living of each respective consumer. Thus, the reports that Defendants sell about thousands of consumers each year are "consumer reports." *See* 15 U.S.C. § 1681a(d).

14. Defendant systematically violates the FCRA by furnishing criminal record information data including sex offender registry records, all of which constitute consumer reports, to third parties. Specifically, due to faulty procedures for obtaining and matching data to consumers, Defendant attributes the records of other individuals on consumers' reports.

15. Defendant regularly attributes criminal record information including sex offender registry records for which there are one or more conflicting personal identifiers between the individual who is the subject of the report and the sex offender or other criminal.

16. Furthermore, Defendant regularly includes criminal record information including sex offender registry records on consumer reports even where the publicly available record demonstrates that the sex offender or criminal is incarcerated at the time of the report, a clear sign that the report does not pertain to an individual who is actively applying for rental housing.

17. Defendant's practices violate the FCRA as a matter of law and exact serious consequences on rental housing applicants and interstate commerce when Defendants report criminal record information including sex offender registry records which do not pertain to the individual who is the subject of the report. Consumers who are the subject of reports containing such information are defamed and prejudiced in their ability to obtain leased housing.

18. Defendant's practices as described above are uniform and not unique to each consumer or transaction.

19. Defendant's practices for reporting criminal record information including sex offender registry records and is not accidental, but instead are the result of deliberately designed policies and procedures.

20. At all relevant times, Defendant's conduct, as well as that of its agents, servants, and/or employees who were acting within the course and scope of their agency or employment and under the direct supervision and control of Defendant, was intentional, willful, reckless, and in grossly negligent disregard for the rights of consumers, including Plaintiffs.

*Mr. Taylor's Experience*

21. On or about April 1, 2026, Plaintiff applied to rent a home at 61 E Ashland Street, in Doylestown, PA from Keyrenter BuxMont Property Management (hereafter, "Key").

22. In conjunction with his application, Key purchased a consumer report on Mr. Taylor through the "Boom" platform for the purpose of evaluating his eligibility to rent the home.

23. On or about April 1, 2026, and as part of the standardized process for compiling a BoomScreen report, the BoomScreen platform obtained a consumer report concerning Mr. Taylor from Cleara.

24. To run the consumer report, Clear obtained Mr. Taylor's first, middle, and last names, his date of birth, his address (including state of residence), and other personal-identifying information.

25. On or about April 1, 2026, Cleara furnished a consumer report on Mr. Taylor to Key through the Boom platform with the knowledge and intent that it would be used to evaluate Mr. Taylor's eligibility to rent a home (the "Cleara Report").

26. The Cleara Report contained inaccurate public record information Defendant obtained and placed on the report pursuant to its standardized procedures.

27. Specifically, the Cleara Report included two sex offender registry records which do not pertain to Plaintiff, stating that he had been convicted of "Possession of Child Pornography" on or about October 4, 2020, and also "Sexual Abuse of Children," on or about January 21, 2021.

28. These records are inaccurate, as Mr. Taylor is not a registered sex offender and has no criminal record at all.

29. The full publicly available sex offender registry records make clear that the registered sex offender at issue has the middle name "Martin," while Plaintiff's middle name as shown on his application is "Michael."

30. Furthermore, the publicly available sex offender registry records demonstrate that beginning in 2022 and at least until April 8, 2026, the registered sex offender at issue was incarcerated, and had the address "York County Prison."

31. Defendant disregarded this conflicting information which put it on notice that the sex offender referenced in the records was not the same person as Mr. Taylor who was applying to rent a home.

32. On or about April 2, 2026, Key informed Plaintiff that his application for the rental property had been declined based on the sex offender records contained in the Cleara Report.

33. Knowing that he had no criminal history, Plaintiff asked Key to send him the report.

34. Rather than sending him the complete report, Key sent him a report generated by Cleara that was only the criminal history portion of the background check.

35. When Mr. Taylor received the report, he was shocked and horrified.

36. Thereafter, Mr. Taylor went to the York County, Pennsylvania court to obtain a report confirming that he had no criminal record in York County and provided the report to Key.

37. When Key received the information from Plaintiff, it informed him that the rental property was no longer available.

38. On or about April 2, 2026, Mr. Taylor obtained a full copy of the report through Boom.

39. Thereafter, Mr. Taylor called Cleara and attempted to dispute the information in the consumer report over the phone.

40. Cleara refused to process Mr. Taylor's dispute, despite its obligation to conduct reinvestigations into consumer disputes pursuant to FCRA section 1681i.

41. On or about April 8, 2026, Mr. Taylor submitted a request for information directly to Defendant via certified mail, seeking all information in Cleara's files about him including the source(s) of such information, as required by FCRA section 1681g(a).

42. Mr. Taylor received confirmation that his certified mail request was delivered on or about April 13, 2026.

43. Mr. Taylor never received a response from Cleara, and remains unaware of whether the information reported to Key remains in Cleara's files, whether it is the same or different from the information contained in the third-party reports he obtained from Key and Boom, and has not received the identification of the source(s) of the information in the report required to be disclosed under FCRA section 1681g(a)(2), or the identification of other entities to which Cleara has disseminated information about him required to be disclosed under FCRA section 1681g(a)(3).

44. Without a full file disclosure, Mr. Taylor and other consumers are unable to exercise his rights to dispute and ensure the fair, equitable, and accurate use of information being sold about him. *See Kelly v. RealPage, Inc.*, 47 F.4th 202, 214-15 (3d. Cir. 2022).

45. As a result of Defendant's conduct, Mr. Taylor and other consumers have suffered harm in the forms of defamation, reputational harm, denials of housing and/or credit, emotional distress (including humiliation and embarrassment), wasted time and resources, and denial of information directly related to the purpose of the FCRA.

46. At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices, was willful, and carried out in reckless disregard of consumers' rights as set

forth under sections 1681e(b), 1681g, and 1681i of the FCRA, and further assumed an unjustifiable risk of harm.

*Mr. Gonzalez's Experience*

47. On or about August 4, 2026, Mr. Gonzalez went to Fernwood, a mobile home community located at 1901 Fernwood Dr., Capital Heights, MD 20743 ("Fernwood"), with the hopes of buying a mobile home.

48. In addition to the purchase price of the home itself, Fernwood charges residents a monthly fee to rent the lot the home sits on.

49. On or about August 4, 2026, Mr. Gonzalez applied to rent a lot at Fernwood.

50. In connection with its evaluation of Mr. Gonzalez's application, Fernwood ordered a consumer report regarding Mr. Gonzalez.

51. On the same day, Cleara furnished a report to Fernwood with the knowledge and intent that it would be used to evaluate Mr. Gonzalez's ability to purchase a mobile home (the "Cleara Report").

52. The Cleara Report contained inaccurate public record information that Defendant obtained and placed on the report pursuant to its standardized procedures.

53. The report contained inaccurate sex offender registry records that do not pertain to Mr. Gonzalez, stating that he had been convicted of "Indecent Assault" on or about February 28, 2017, with a category of "SEX OFFENDER" and a disposition of "Registered Sex Offender"

54. These records are inaccurate and do not pertain to Plaintiff Gonzalez, who is not a registered sex offender, and has never been convicted of indecent assault.

55. The full publicly available sex offender registry records make clear that the registered sex offender at issue has a different date of birth and different state of residence from Plaintiff Gonzalez.

56. Defendant disregarded this conflicting information which put it on notice that the sex offender referenced in the records was not the same person as Mr. Gonzalez who was applying to reside in a mobile home community.

57. As a result of the inaccurate information Cleara provided to Fernwood, Mr. Gonzalez's application to rent a site in Fernwood was denied outright.

58. This information was shocking, embarrassing, and upsetting to Mr. Gonzalez, who was hoping to be able to move in later that month.

59. As a result of Defendant's conduct, Plaintiffs and other consumers have suffered harm in the forms of defamation, reputational harm, denials of housing and/or credit, emotional distress (including humiliation and embarrassment), and wasted time and resources.

60. At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices, was willful, and carried out in reckless disregard of consumers' right as set forth under sections 1681e(b) of the FCRA, and further assumed an unjustifiable risk of harm.

## **CLASS ACTION ALLEGATIONS**

61. Plaintiffs bring this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Classes:

> **Section 1681e(b) Class:** All persons residing in the United States (including all Territories and other political subdivisions of the United States) about whom, (i) beginning five years prior to the filing of this Complaint and continuing through the conclusion of this action, (ii) were the subject of a consumer report furnished by Cleara to one or more third parties; (iii) in which Cleara reported that it found a record in its National Sex Offender Database Search; and (iv) the person had no records in the National Sex Offender Registry database.

> **<u>Section 1681g Class:</u>** All persons residing in the United States (including all Territories and other political subdivisions of the United States) who, beginning five years prior to the filing of this Complaint and continuing through the conclusion of this action, requested information from Defendant and to whom Defendant did not provide all information set forth in FCRA section 1681g(a).

62. Plaintiffs reserve the right to amend the definitions of the Classes based on discovery or legal developments.

63. **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. Upon information and belief, Cleara furnished hundreds, if not thousands, of consumer reports on consumers each year in which it inaccurately labeled the consumer as a sex offender, and those persons' names and addresses are identifiable through documents maintained by Cleara.

64. **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Classes and predominate over the questions affecting only individual members. The common legal and factual questions include, among others: (a) whether Cleara follows reasonable procedures to assure the maximum possible accuracy of sex offender records contained in the reports it sells, (b) whether Cleara responds to consumer requests for information consistent with the FCRA), and (c) whether any violation of the FCRA by Cleara was willful.

65. **Typicality. FED. R. CIV. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each Class member. Plaintiffs have the same claims for statutory and punitive damages as Class members, arising out of Cleara's common course of conduct.

66. **Adequacy. FED. R. CIV. P. 23(a)(4).** Plaintiffs are adequate representatives of the Class(es). Their interests are aligned with and not antagonistic to, the interests of the members of the Class(es) they seek to represent, they have retained counsel competent and experienced in such

litigation, and they intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class(es).

67. **Predominance and Superiority. FED. R. CIV. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Cleara's conduct. It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Cleara's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding

**COUNT I – FCRA § 1681e(b)**
**Plaintiffs Ryan Taylor and Juan Gonzalez vs. Cleara**
**CLASS CLAIM FOR THE FCRA SECTION 1681e(b) CLASS**

68. Plaintiffs reallege all paragraphs as if fully set forth herein.

69. Cleara violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports furnished regarding Plaintiffs and the Class members.

70. Cleara knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

71. Cleara obtained or had available substantial written materials that apprised it of its duties under the FCRA.

72. Despite knowing of these legal obligations, Cleara acted consciously in breaching its known duties and deprived Plaintiffs of their rights under the FCRA.

73. Cleara's violation of the FCRA was willful, rendering Cleara liable pursuant to 15 U.S.C. § 1681n. In the alternative, Cleara was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

**COUNT II – FCRA § 1681g**
**Plaintiff Ryan Taylor vs. Cleara**
**CLASS CLAIM FOR THE FCRA SECTION 1681g CLASS**

74. Plaintiff Taylor realleges all paragraphs as if fully set forth herein.

75. Cleara violated 15 U.S.C. § 1681g by failing to clearly and accurately disclose all information in its files upon request to Plaintiff Taylor and members of the FCRA Section 1681g Class. s.

76. Cleara knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

77. Cleara obtained or had available substantial written materials that apprised it of its duties under the FCRA.

78. Despite knowing of these legal obligations, Cleara acted consciously in breaching its known duties and deprived Plaintiffs of their rights under the FCRA.

79. Cleara's violation of the FCRA was willful, rendering Cleara liable pursuant to 15 U.S.C. § 1681n. In the alternative, Cleara was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

**COUNT III – FCRA § 1681i**
**Plaintiff Ryan Taylor vs. Cleara**
**INDIVIDUAL CLAIM**

80. Plaintiff Taylor realleges all paragraphs as if fully set forth herein.

81. Cleara violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation upon direct notice that Plaintiff Taylor disputed the accuracy of information in Cleara's file.

82. Cleara knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

83. Cleara obtained or had available substantial written materials that apprised it of its duties under the FCRA.

84. Despite knowing of these legal obligations, Cleara acted consciously in breaching its known duties and deprived Plaintiff Taylor of his rights under the FCRA.

85. Cleara's violation of the FCRA was willful, rendering Cleara liable pursuant to 15 U.S.C. § 1681n. In the alternative, Cleara was negligent, entitling Plaintiff Taylor to recover under 15 U.S.C. § 1681o.

**COUNT IV - Defamation**
**Plaintiff Ryan Taylor vs. Cleara**
**INDIVIDUAL CLAIM**

86. Plaintiff Taylor re-alleges all paragraphs as if fully set forth herein.

87. In 2006 Congress enacted the Adam Walsh Child Protection and Child Safety Act, which established a uniform and comprehensive sex offender registration database. 34 U.S.C. § 20901, et seq.

88. The purpose of the database is to "protect the public from sex offender, and offenders against children, and in response to the vicious attacks by violent predators…" Id.

89. A person who appears in the sex offender database is by definition, "an individual who was convicted of a sex crime." 34 U.S.C. § 20911(1) (defining the term "Sex Offender").

90. Cleara reported in writing to a third party, Key, that Mr. Taylor is a registered sex offender.

91. Cleara's defamatory statement falsely accused Mr. Taylor of a crime and of being engaged in sexual misconduct.

92. Cleara's written statement to Key regarding Mr. Taylor being a registered sex offender was false and defamatory.

93. Cleara's statement that Mr. Taylor was a sex offender was made with malice or willful intent. It knew that its statement was false or acted with reckless disregard of the statement's truth or falsity.

**COUNT V - Defamation**
**Plaintiff Juan Gonzalez vs. Cleara**
**INDIVIDUAL CLAIM**

94. Plaintiff Gonzalez re-alleges all paragraphs as if fully set forth herein.

95. In 2006 Congress enacted the Adam Walsh Child Protection and Child Safety Act, which established a uniform and comprehensive sex offender registration database. 34 U.S.C. § 20901, et seq.

96. The purpose of the database is to "protect the public from sex offender, and offenders against children, and in response to the vicious attacks by violent predators…" Id.

97. A person who appears in the sex offender database is by definition, "an individual who was convicted of a sex crime." 34 U.S.C. § 20911(1) (defining the term "Sex Offender").

98. Cleara reported in writing to a third party, Fernwood, that Mr. Gonzalez is a registered sex offender.

99. Cleara's defamatory statement falsely accused Mr. Gonzalez of a crime and of being engaged in sexual misconduct.

100. Cleara's written statement to Fernwood regarding Mr. Gonzalez being a registered sex offender was false and defamatory.

101. Cleara's statement that Mr. Gonzalez was a sex offender was made with malice or willful intent. It knew that its statement was false or acted with reckless disregard of the statement's truth or falsity.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

a. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiffs and the undersigned counsel of record to represent same;

b. An award of actual, statutory and punitive damages for Plaintiffs and the Classes;

c. An award of pre-judgment and post-judgment interest as provided by law;

d. An award of attorneys' fees and litigation costs; and

e. Such other relief as the Court deems just and proper

**DEMAND FOR JURY TRIAL**

PLAINTIFFS hereby demands a jury trial on all claims for which they has a right to a jury.

DATED: September 28, 2026

By: */s/ James A. Francis*

James A. Francis
**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis
Lauren KW Brennan
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
Email: jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Robert P. Cocco
**ROBERT P. COCCO, P.C.**
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
bob.cocco@phillyconsumerlaw.com

COUNSEL FOR PLAINTIFF